UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MARY O. "MOLLIE" BARNES,

     Plaintiff,

vs.                            CASE NO.:   5:13-cv-61-RS/CJK

FRANK MCKEITHEN, in his official
capacity as SHERIFF, BAY COUNTY,
FLORIDA, and JASON DAFFIN,
individually,

     Defendants.

_____/

## DEFENDANT FRANK MCKEITHEN'S MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF LAW

COMES NOW Defendant FRANK MCKEITHEN, in his official capacity as Sheriff of Bay County, Florida, through undersigned counsel, and pursuant to Rule 56, Fed.R.Civ.P. and Rule 56.1 of the Local Rules of this Court, moves this Court for summary judgment in his favor.  The specific grounds for this motion and the substantive matters of law to be argued in support thereof are:

1.     There exists between the parties no genuine issue as to any material fact.

2.     Probable cause existed for Plaintiff's arrest, thereby negating Plaintiff's claim of false arrest as set forth in Count II of Plaintiff's complaint.

3.     Plaintiff cannot maintain a federal claim of any nature against Defendant McKeithen, in his official capacity, under the facts of this case and the record evidence.

4.     Count IV of Plaintiff's complaint, a purported negligence claim against Defendant McKeithen, in his official capacity, fails to state a cause of action.

## STATEMENT OF MATERIAL FACTS

Plaintiff's alleged cause of action against Defendant Jason Daffin arises out of her arrest on September 1, 2009, on a charge of aggravated battery against Jillian Davis.  On that date, Defendant Daffin was an investigator with the Bay County Sheriff's Office.  At the time of Plaintiff's arrest, Defendant Daffin had been a law enforcement officer for approximately seven years.

The following are undisputed facts with respect to Plaintiff's arrest on September 1, 2009, which give rise to Plaintiff's alleged cause of action.

On August 30, 2009, shortly after midnight, Plaintiff Mary Olivia "Mollie" Barnes was asleep in her bedroom, along with her boyfriend at the time.  Plaintiff resided in a house in Panama City, Florida with her roommate, Matt Wilcox.  At the invitation of Matt Wilcox, Jillian Davis was visiting the residence. (Deposition Jillian Davis p. 8, lines 5-16)

At some point, Jillian Davis and Matt Wilcox began an argument that escalated into some type of physical altercation.  The noise from the altercation awakened Mollie Barnes.  Mollie Barnes did not call 911 with respect to the altercation.  Instead, she quickly put on some clothes and went into the living area, where the altercation was occurring.  During the altercation, it is undisputed that Mollie Barnes repeatedly struck Jillian Davis in the face with her fists.  (Deposition Mary Barnes p. 18, lines 24-25; p. 19, lines 1, 2; p. 21, lines 4-8; Deposition Jillian Davis p. 34, lines 18-25; p. 35, lines 1-13; p. 37, lines 22-23).

Once Jillian Davis was outside the premises and had been provided with her keys and personal belongings, she drove to a nearby all-night diner (Coram's) and called her best friend.  When her friend arrived she advised Jillian Davis that they needed to call the police. (Deposition Jillian Davis p. 10, lines 9-25, p. 11, lines 1-11)  The Bay County Sheriff's Office was contacted

with respect to a physical altercation and Dep. Rick Williams responded to Coram's.   He immediately advised Ms. Davis that, due to her obvious injuries, EMS needed to be contacted. Jillian Davis advised Dep. Williams that Matthew Wilcox, a former boyfriend, had pinned her up against a wall in his residence and choked her while a white female she knew as Mollie Barnes punched her numerous times in the face, which resulted in damage to her nose and left eye.   EMS responded to the scene and advised that Ms. Davis needed to be taken to the emergency room.   By that time Ms. Davis' mother had also arrived at the scene.   Ms. Davis went to Bay Medical Center with her mother. (Sworn Statement Rick Williams ¶¶ 3-5; Deposition Rick Williams, p. 8, lines 2-14; p. 12, lines 2-8.)

Dep. Williams attempted to locate the residence where the incident took place, based on a description provided by Ms. Davis; however, he was unable to locate the residence.   Accordingly, he informed Sgt. Jason Daffin of the incident and prepared a report. (Sworn Statement Rick Williams ¶¶ 6-8, Authenticated Offense/Incident Report attached; Deposition Rick Williams, p. 10, lines 6-20.)

On September 1, 2009, Sgt. Jason Daffin assigned himself as the case agent to conduct a follow-up investigation.   Sgt. Daffin went to Ms. Davis' family residence in Bay County, Florida, where she was visiting. Ms. Davis complained to Sgt. Daffin that she had gone to the Wilcox/Barnes residence to visit her former boyfriend, Matt Wilcox, at his invitation.   After she had been there for approximately 30 minutes, an argument ensued. Ms. Davis advised that she got up to leave, at which time Wilcox shoved her to the ground.   He then grabbed her by the throat and shoved her up against a wall.   At about that time his roommate, whom she knew as Mollie Barnes, came into the room. Mollie repeatedly struck her in the face and left eye with a closed fist while Wilcox held her against

3

a wall.  Ms. Davis advised Sgt. Daffin that Wilcox held her by the throat, which temporarily cut off her oxygen, while Mollie Barnes punched her in the face.  Jillian Davis advised Sgt. Daffin that during the incident she was in and out of consciousness but believes she was struck by Mollie between 10 and 15 times in the head and face.  Sgt. Daffin took photos of Jillian Davis.  Dep. Williams had also taken photos during the initial investigation at Coram's.  Ms. Davis sustained bruises to her legs, arms and the left side of her torso.  She received abrasions to her elbows, which were consistent with her description of being pushed to the floor.  Her forehead was swollen, her nose appeared to be fractured and her left eye was almost completely shut.  According to Dep. Williams' report, Jillian Davis had petechia in her eye at the time he prepared his initial offense report, which could be consistent with her description of being choked by Matt Wilcox while Mollie Barnes punched her in the face.  Ms. Davis advised Sgt. Daffin that she had received medical attention at Bay Medical Center, where it was discovered that her nose had been fractured.  She advised Sgt. Daffin that she had been informed by medical personnel at Bay Medical Center that she might have to undergo reconstructive surgery on her nose and that there was blood behind the cornea of her left eye, which caused a concern that she may permanently lose some vision in her left eye.  When Sgt. Daffin made contact with Jillian Davis, it had been 48 hours since the attack and her eye was still almost completely shut. (Sworn Statement Rick Williams ¶ 8, authenticated Offense/Incident report attached; Affidavit Jason Daffin ¶¶ 3-9, authenticated documents and photographs attached; Deposition Jason Daffin p. 4, lines 16-25; p. 5, lines 1-25; p. 6, lines 1-25, p. 7, lines 1-25.)

On September 1, 2009, after meeting with Jillian Davis, Sgt. Daffin went to Mollie Barnes' place of employment, Andy's Flour Power, and arrested her for aggravated battery.  Ms. Barnes

4

immediately invoked her right to counsel and did not provide Sgt. Daffin with any information regarding the incident.  On the way to the Bay County Sheriff's Office, Sgt. Daffin, on Mollie Barnes' behalf, placed a call to her attorney, Jim Appleman, so that he could speak with Ms. Barnes. (Affidavit Jason Daffin ¶¶ 9-11; Deposition Jason Daffin p. 8, lines 1-25; p. 9, lines 1-25; p. 10, lines 1-25; p. 11, lines 1-8.)

Due to Ms. Davis' obvious facial injuries and her statements to Sgt. Daffin that she had a fractured nose as well as possible permanent loss of vision in her left eye, Sgt. Daffin arrested Mollie Barnes and charged her with aggravated battery rather than a lesser battery charge.  On October 19, 2009, the state of Florida filed an information against Mary Olivia "Mollie" Barnes for aggravated battery. (Deposition Jason Daffin, p. 13, lines 6-21; certified copy of Information State of Florida v. Mary Olivia Barnes, Case No. 09-2803G attached hereto.)[1]

On April 5, 2010, the State of Florida reduced the charge against Mary Olivia Barnes to battery in violation of §784.03(1), Fla. Stat. (Certified copy of second amended Information, Case No. 09-2803G).

During the course of the criminal case, Ms. Barnes invoked Florida's stand your ground defense, arguing that she was acting in self-defense as well as defense of Matthew Wilcox when she

---

[1]On September 1, 2009, Sgt. Daffin also interviewed Matthew Wilcox who, of his own accord, responded to the Sheriff's Office to explain his version of the events.  During his pre-interview conversation and taped interview with Sgt. Daffin at the Bay County Sheriff's Office, Matthew Wilcox gave inconsistent statements.  Ms. Davis' account of Mr. Wilcox holding her by the throat against a wall, the marks on Ms. Davis' neck, and what appeared to be petechia in Ms. Davis' left eye, resulted in Sgt. Daffin's arrest of Mr. Wilcox on a charge of domestic battery by strangulation. (Affidavit Jason Daffin ¶ 12; Deposition Jason Daffin, p. 12, lines 4-25; p. 13, lines 1-5.)  The State of Florida filed an information against Matthew Wilcox for domestic battery by strangulation. (Certified copy of Information State of Florida v. Matthew Ryan Wilcox, Case No. 09-2803G attached hereto.)

physically attacked Jillian Davis in an effort to remove her from the residence.  A hearing on the stand your ground immunity motion was held on October 20, 2010.  Numerous witnesses, including Ms. Barnes, testified at the hearing.  The prosecutor and Ms. Barnes' defense counsel both presented argument.  Immediately upon the conclusion of the hearing, the judge denied the stand your ground immunity motion. (State of Florida v. Mary Olivia Barnes, Case No. 10-5681 MMA, Hearing held October 20, 2010, cover page, pp. 2-6, 88-89).

On May 12, 2011, an additional, brief hearing was held on Mary "Mollie" Barnes' Second Motion to Dismiss the case based on Florida's stand your ground immunity.  Sgt. Daffin was questioned and testified about medical records and medical deposition testimony that he did not have at the time of the arrest.  Sgt. Daffin testified:

> Q:  Basically, in light of the information that you have today as compared to what you had back when this incident occurred, would you have handled this case in a different way?
>
> A:  Knowing the medical that I now know, I was under the understanding that there was permanent damage or permanent disability caused to Jillian Davis from the actions, which is why I filed charges on a felony charge.  Knowing now that there was, those injuries were not that severe, obviously, I would have filed a different charge than what I did, yes.
>
> Q:  And, basically, would you have made an arrest or would you have sent a file to the State Attorney's Office for them to review and make a decision on?
>
> A:  More than likely sent a file to the State Attorney's Office to review.

(State of Florida v. Mary Olivia Barnes, Case No. 10-5681 MMA, Transcript of hearing on May 12, 2011.)                                                       .

* * *

6

Significantly, Sgt. Daffin did not testify that had he reviewed medical records and medical deposition testimony that he would not have made an arrest. He specifically testified that he would have filed a "different charge."

During his deposition in this case, Sgt. Daffin was able to explain his testimony about sending a file to the State Attorney's Office for review, and testified as follows:

> Q: To the best of your memory, at one of the hearings do you recall testifying that if you had the medical evidence available to you at the time you would have sent the charge to the SA for review first?
>
> A: Yes, I would have. Because I think, at that time, we realized she didn't have the fractured orbital bone. But she had a fractured nose. And at that time, I probably would've conferred with the State Attorney's Office on the appropriate charge, if they wanted to do a felony battery or if they wanted to do ag. battery, just depending on the totality of everything that took place.

(Jason Daffin deposition, p. 14, lines 11-21.)

* * *

On May 26, 2011, the Court granted Barnes' motion to establish immunity from prosecution, thereby dismissing the criminal charges against her. (State of Florida v. Mary Olivia Barnes, Case No. 10-5681 MMA, Order Granting Defendant's Motion to Establish Immunity From Prosecution.)

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT MCKEITHEN'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 7.1(A) of the Local Rules of this Court, Defendant Frank McKeithen, in his official capacity as Sheriff of Bay County, Florida, provides the following Memorandum of Law in support of his argument that he is entitled to summary judgment in his favor as a matter of law.

### STANDARD FOR SUMMARY JUDGMENT

On a motion for summary judgment Defendants initially have the burden to demonstrate an absence of evidence to support the nonmoving party's case. Celotex Corporation v. Catrett, 477 U.S.

7

317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial. Id.  An issue of fact is "material" if it could affect the outcome of the case. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v. Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In assessing whether defendants have met their burden, the Court views the evidence and all factual inferences in the light most favorable to the non-movant and resolves all reasonable doubts about the facts in favor of the non-movant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).

If the movant has satisfied its initial burden, the burden shifts to the non-movant, who must show "that summary judgment would be inappropriate because there exists a material issue of fact." Mullins v. Crowell, 228 F.3d 1305, 1313 (11th Cir. 2000).

At the summary judgment stage, plaintiff can no longer rest upon conclusory allegations, but instead must demonstrate a genuine issue for trial. Fed. R. Civ. P. 56(e).

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" <u>Owen v. Wille</u>, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).

Applying the foregoing, it is apparent that Plaintiff cannot meet her burden of presenting facts and evidence to support any of her alleged claims against Defendant McKeithen. Accordingly, Defendant McKeithen is entitled to summary judgment in his favor as a matter of law.

**Count II**
**False Arrest/Imprisonment**

Count II of Plaintiff's complaint is purportedly a claim of false arrest/imprisonment against "Defendant BCSO" that is pled in the alternative to Count I, which is a false arrest/imprisonment claim improperly brought against Defendant Jason Daffin, individually.[2] To the extent that Plaintiff attempts to state a cause of action for false arrest/imprisonment against Defendant McKeithen, in his official capacity as Sheriff of Bay County, Florida, probable cause existed for Plaintiff's arrest which precludes Plaintiff from maintaining a cause of action against Defendant McKeithen for false arrest.

Count II of Plaintiff's complaint is entitled "False Arrest/Imprisonment." Under Florida law, false arrest and false imprisonment are different labels for the same cause of action. <u>Johnson v. Weiner</u>, 155 Fla. 169; 19 So.2d 699 (1944); <u>Jackson v. Biscayne Medical Center, Inc.</u>, 347 So.2d 721 (Fla. 3d DCA 1977); <u>Weissman v. K-Mart Corp.</u>, 396 So.2d. 1164 (Fla. 3d DCA 1981).

Probable cause existed for Plaintiff's arrest. The standard for determining whether probable cause exists is the same under Florida and federal law. <u>Rankin v. Evans</u>, 133 F.3d 1425, 1433 (11th Cir. 1998).

---

[2] Defendant Daffin's Motion for Summary Judgment is being filed contemporaneously with Defendant McKeithen's Motion for Summary Judgment.

Probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person arrested is guilty of a criminal offense.  Florida Game & Fresh Water Fish Comm. v. Dockery, 676 So.2d 471 (Fla. 1st DCA 1991); Mailly v. Jenne, 867 So.2d 1250, 1251 (Fla. 4th DCA), reviewed denied, 884 So.2d 23 (Fla. 2004); Daniel v. Village of Royal Palm Beach, 889 So.2d 988, 990 (Fla. 4th DCA 2004).  It is not necessary that the officer know facts which would prove the claim beyond a reasonable doubt. Lee v. Geiger, 419 So.2d 717 (Fla. 1st DCA 1982).  First hand knowledge by an officer is not required; the receipt of information from someone who it seems reasonable to believe is telling the truth is adequate.  See, Salas v. State, 246 so.2d 621 (Fla. 3rd DCA 1979); Walker v. State, 196 so.2d 8 (Fla. 3rd DCA 1967).  Facts constituting probable cause for an arrest need not meet the standard on which a conviction must be based.  State v. Outten, 206 So.2d 392 (Fla. 1968).

An imperfect criminal investigation is not sufficient basis for recovery in a false arrest action. Lee v. Geiger, 419 So.2d 717, 719 (Fla. 1st DCA 1982).  "It is not necessary that the arresting officer know facts that would absolutely prove beyond a reasonable doubt the guilt of the person charged. Probable cause is much less than that.  Probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the accused is guilty of the offense charged." (Id.)

The filing of an action by the state is evidence that there are reasonable grounds to prosecute in the matter. Colonial Source, Inc. v. Scarborough, 355 So.2d 1181 (Fla. 1977); Sussman v. City of Daytona Beach, 462 So.2d 595 (Fla. 5th DCA 1985).

Events that occur subsequent to the arrest (such as a jury verdict of not guilty or a dismissal of the claim filed by the state) cannot remove the probable cause that existed at the time of the arrest.

10

<u>Dodds v. State</u>, ,434 So.2d 940, 942 (Fla. 4th DCA 1983); <u>Florida Game and Freshwater Fish</u>

<u>Commission v. Dockery</u>, *supra*.

The undisputed facts and record evidence in this case clearly establish probable cause for Plaintiff's arrest. It is undisputed that the facts furnished by the victim, Jillian Davis, to Deputy Rick Williams, the initial investigating officer, were the same facts Ms. Davis provided to Defendant Daffin when he interviewed her on September 1, 2009. Defendant Daffin interviewed Ms. Davis for approximately an hour at her parents' residence prior to taking a taped statement from her. He went back and forth through the events she related to him. There were never any inconsistencies in Ms. Davis' account of the incident. Additionally, Ms. Davis' account of the events never wavered from what she had previously told Dep. Williams. The injuries Defendant Daffin observed to Ms. Davis' face indicated that she had sustained a significant beating to her face. He did not simply take Ms. Davis' word with respect to the incident. There was physical evidence to support Ms. Davis' version of the events. Additionally, Ms. Davis specifically identified, to both Dep. Williams and Defendant Daffin, Mary "Mollie" Barnes as the person who repeatedly struck her in the face while Matthew Wilcox held her against the wall by her throat. The information provided to Defendant Daffin by Ms. Davis, which he determined to be credible given the consistency of her account of the event, the physical injuries he observed to her body, and her explanation of the severity of her injuries, provided more than ample probable cause for Defendant Daffin to arrest Ms. Barnes on September 1, 2009 for the battery she inflicted on Jillian Davis. (Affidavit Daffin, pars. 5-10).

The undisputed facts and record evidence in this case clearly establish probable cause for Plaintiff's arrest. Defendant McKeithen is entitled to summary judgment in his favor as a matter of law as to Count II of Plaintiff's complaint.

**Count III - Fourth Amendment Violation - False Arrest**

Plaintiff sued Defendant McKeithen, in his official capacity as Sheriff of Bay County, Florida, alleging, with no facts of any nature, that "Defendant BCSO" acted with deliberate indifference in failing to implement adequate hiring and supervisory procedures to property identify suspects of crimes.  Plaintiff further alleges, again with no supporting facts of any nature, that Defendant Sheriff failed to train, supervise and discipline the "individual Defendants" as alleged herein.[3]

Plaintiff further broadly alleges that Defendant Sheriff's failure to supervise, investigate and discipline the individual Defendant constitutes "either an improper policy or the absence of a policy" which resulted in deliberate indifference to Plaintiff's constitutional rights. (Plaintiff's complaint, pars. 35, 36).

Plaintiff's complaint wholly fails to include any facts to support her purported federal claim against Defendant McKeithen in his official capacity as Sheriff of Bay County, Florida. Significantly, to date no record evidence exists to support such a claim.

Defendant McKeithen propounded interrogatories to Plaintiff in an effort to ascertain if Plaintiff had any facts of any nature to support her alleged federal claim against him.  Plaintiff responded to Defendant McKeithen's interrogatories as follows:

> 20.     State with specificity all facts to support your allegations that the Bay County Sheriff's Office failed to implement adequate hiring and supervisory procedures to properly identify suspects of crime, as alleged in paragraph 35 of your complaint.

---

[3]Defendant Jason Daffin, in his individual capacity, is the only "individual Defendant" named in Plaintiff's complaint.

**ANSWER: I do not know the exact policies, customs or practices; therefore, I am answering this question to the best of my ability:**

**BCSO hired Deputy Jason Daffin, who when presented with the 911 call/claim, took the claim and without doing a proper investigation and looking at evidence that was available to him, drafted an affidavit that was without facts and then arrested someone without obtaining a warrant.**

21.    State with specificity all facts of which you have personal knowledge to support your allegation that the Bay County Sheriff's Office failed to implement adequate procedures to investigate constitutional violations by Bay County deputy sheriffs and to impose discipline on deputies when they engaged in constitutional violations, as alleged in paragraph 35 of your complaint.

**ANSWER:    This information is unknown at this time.**

22.    State with specificity all facts, of which you have personal knowledge, that Sheriff McKeithen failed to train, supervise, investigate and discipline Bay County deputy sheriffs, including Deputy Sheriff Jason Daffin.

**ANSWER:    This information is unknown at this time.**

23.    Identify each area in which you contend Sheriff McKeithen knew of a need to provide training to Bay County deputy sheriffs and failed to do so.

**ANSWER:    This information is unknown at this time.**

(Plaintiff's Answers to Defendant McKeithen's Interrogatories attached hereto.)

\* \* \*

Count III of Plaintiff's complaint, which purports to be a federal claim of deliberate indifference against Defendant McKeithen, in his official capacity as Sheriff of Bay County, Florida, is wholly without merit and need not be seriously considered by this Court.  Defendant McKeithen addresses Count III of Plaintiff's compliant only in an abundance of caution.

The crux of the matter in this case is whether there was probable cause for Plaintiff's arrest.  If there was probable cause to arrest Plaintiff, Defendant Daffin did not inflict any constitutional

harm and Defendant McKeithen, in his official capacity, cannot be held liable.  The standard for determining whether probable cause exists for an arrest is the same under Florida and federal law. Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998).  Probable cause requires that an arrest be objectionably reasonable under the totality of the circumstances. Id. at 1435.  The observations and experiences of the officers on the scene are weighed as part of the totality of the circumstances. United States v. Gonzalez, 969 F.2d 999, 1003 (11th Cir. 1992).

The standard for probable cause is met when "the facts and circumstances within the officer's knowledge, of which he or she had reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Rankin, 133 F.3d at 1435.

More than a mere suspicion is required, but not convincing proof. Rankin, 133 F.3d at 1435; see also, Marx v. Gumbinner, 905 F.2d 1503, 1506 (11th Cir. 1990).  (Noting that overwhelmingly convincing evidence is not required.)  Officers are not required to adhere to the standard of "legal technicians." See, Rankin, 133 F.3d at 1435; see also, Marx, 905 F.2d at 1507.  To establish probable cause, an arresting officer is required to conduct a reasonable investigation, but is not required to conduct an investigation that would suffice to eliminate the possibility that an innocent person would be arrested. See, Rankin, 133 F.3d at 1435-36. (The law is clear that law enforcement is entitled to rely "to a meaningful degree" on a victim's statements in determining the existence of probable cause. (Id. at 1440).

The officer's investigation should ensure that an arrest is supported by probable cause; however, the officer is not required to conduct a trial. See, Williams v. City of Homestead, 206

14

Fed.Appx. 886, 889 (11th Cir. 2006).  The fact that the charges are ultimately dropped is not relevant to determine whether an officer had probable cause to make an arrest. Marx, 905 F.2d at 1507.

Inasmuch as Defendant Daffin, in arresting Plaintiff, did not inflict any constitutional injury on Plaintiff, there is no basis for liability against the Office of the Sheriff of Bay County, Florida. City of Los Angeles v. Heller, 478 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986). *See also*, Garczynski v. Bradshaw, 573 F.3d 1158, 1171 (11th Cir. 2009) (Absent a showing that any named individual officer deprived plaintiff of his constitutional rights, the court did not need to explore whether the Sheriff's policies regarding crisis intervention training violated the decedent's constitutional rights.); Case v. Eslinger, 555 F.3d 1317, 1228 (11th Cir. 2009).  (For damages to be awarded against a municipal corporation based on the actions of one of its officers, the officer has to have inflicted constitutional harm.)

The undisputed facts and record evidence in this case clearly establish probable cause for Plaintiff's arrest.  Accordingly, Plaintiff's constitutional rights were not violated and she can maintain no cause of action against Defendant McKeithen based on her arrest, as alleged in Count III of Plaintiff's complaint.

To the extent that the Court elects to address Plaintiff's purported federal claim against Defendant McKeithen in Count III, such claim is addressed in an abundance of caution.

It is clearly established that Plaintiff's § 1983 claim against Defendant McKeithen must be based upon something more than *respondeat superior*. Monell v. New York City Department of Social Services, 436 U.S. 658, 691; 98 S.Ct. 2018; 56 L.Ed. 611 (1978).  The Eleventh Circuit Court of Appeals has stated:

15

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a casual connection between actions of the supervising official and the alleged constitutional deprivation.

Brown v. Crawford, 906 F. 2d 667, 671 (11th Cir. 1992).

The court in Brown set forth the limited circumstances upon which a causal connection between the actions of a supervising official and the alleged constitutional deprivation can be shown sufficient to render a supervising official liable under a 42 USC § 1983 claim.  The Eleventh Circuit held that the causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of a need to correct the alleged deprivation, and he fails to do so.  The Court expounded further and stated:

> The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of a continued duration rather than isolated occurrences.

(Id. at 671, 672.)

No record evidence exists in this case that any "wide spread abuse" directed to Plaintiff or any other citizen of Bay County, Florida was "obvious, flagrant, and rampant" so that Defendant McKeithen would have been on notice of the need to correct the constitutional deprivation, but failed to do so.  No record evidence exists to support an unconstitutional policy.  The very term "cause" implies a course of action chosen from various alternatives. Oklahoma City v. Tuttle, 471 US 808 (1985) (Municipal liability attaches where–and only where–a deliberate choice to follow a course of action is made from various alternatives by policy makers. Pembaur v. City of Cincinnati, 475 US 469, 483-484 (1986).

As evidenced by the Affidavit of Sheriff Frank McKeithen, he had no personal involvement in the investigation or arrest of Plaintiff on September 1, 2009 by Sgt. Jason Daffin. (Affidavit Frank

16

McKeithen ¶¶ 3, 4)  As further evidenced by the affidavit of Sheriff McKeithen, he has no personal knowledge or reason to believe that any policy or procedure of the Bay County Sheriff's Office created or resulted in widespread abuse in which  citizens of Bay County, Florida were subjected to inadequate investigations by Bay County deputy sheriffs that resulted in arrests of Bay County, Florida citizens without probable cause. (Id. ¶ 5).  Defendant McKeithen has no knowledge of or reason to believe that any policy of the Bay County Sheriff's Office with respect to the manner in which Bay County deputy sheriffs investigate crimes against Bay County citizens required additional or different training or supervision for Bay County deputy sheriffs.  Defendant McKeithen further has no reason to believe that prior to September 2009, or to date, there was inadequate supervision or a need for a different type of supervision with respect to the manner in which Bay County deputy sheriffs investigated crimes against the citizens of Bay County, Florida and/or made decisions with respect to arrests of Bay County, Florida citizens.  Defendant McKeithen has no reason to believe that Sgt. Daffin took any actions with respect to his investigation resulting in the arrest of Plaintiff Mary "Mollie" Barnes that required any type of discipline. (Id.  ¶¶ 6-8)

Plaintiff's claim against Defendant Sheriff based on an alleged failure to properly train and supervise his employees also fails as a matter of law.  To establish deliberate indifference for such a claim, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

As set forth above, Defendant McKeithen propounded interrogatories to Plaintiff in an effort to ascertain what facts, if any, Plaintiff had to support her purported federal claim against the Office of the Sheriff of Bay County, Florida.  When presented with the opportunity to support her claim,

17

Plaintiff could not do so. (Plaintiff's Answers to McKeithen's Interrogatories Nos. 20, 21, 22, 23 attached hereto.)

Plaintiff's complaint fails to state any facts to support deliberate indifference by Sheriff Frank McKeithen based on a failure to implement adequate procedures or failure to train, supervise and discipline his deputy sheriffs.  When offered an opportunity to present facts or evidence to support her purported  federal claim, Plaintiff wholly failed to do so.  Accordingly, no record evidence exists to support any federal claim of any nature against Defendant McKeithen, in his official capacity as Sheriff of Bay County, Florida.  Plaintiff has wholly failed to meet the strict standards required to demonstrate a causal connection between any policy of Defendant Sheriff or any failure to train, supervise or discipline his employees sufficient to render Defendant Sheriff liable in his official capacity.

Plaintiff's bare, conclusory allegations are insufficient as a matter of law to support her alleged federal claim against Defendant McKeithen in his official capacity as Sheriff of Bay County, Florida. Fraire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir. 1992), *cert. denied.*, 113 S.Ct. 462 (1992); Fullman v. Graddick, 739 F.2d 553, 556 (11th Cir. 1984)

Plaintiff's alleged claim set forth in Count III of Plaintiff's complaint, which attempts to sue Defendant McKeithen for violation of Plaintiff's constitutional rights, wholly fails as a matter of law. Defendant McKeithen, in his official capacity as Sheriff of Bay County, Florida, is entitled to summary judgment in his favor as a matter of law as to Count III of Plaintiff's complaint.

### Count IV - Negligence

Count IV of Plaintiff's complaint purports to be a negligence claim against "Defendant BCSO."  To the extent that Plaintiff attempts to sue Sheriff McKeithen in his official capacity

alleging a claim of negligence, such claim wholly fails as a matter of law.  Plaintiff's complaint fails to include any facts to support a claim of negligence against Defendant McKeithen arising out of what appears to be Plaintiff's brief incarceration in the Bay County Jail.[4]  Count IV of Plaintiff's complaint fails to include any facts to support the manner in which Defendant McKeithen breached a duty of care to Plaintiff or the manner in which he was injured if, in fact, Plaintiff is claiming any injury.

In an attempt to ascertain whether Plaintiff had any facts to support her purported claim of negligence, Defendant McKeithen propounded the following interrogatory to Plaintiff:

25.    Provide specific facts to support your allegation that Defendant McKeithen breached his duty of care to you while you were housed in the Bay County Jail including specific facts as to the manner in which you were allegedly "injured" as alleged in paragraph 42 of your complaint.

**ANSWER:**

**I was arrested and incarcerated without cause and without a warrant. While incarcerated, I was threatened by personnel, with bodily harm.  My mental state was injured.  I suffered fear and embarrassment.**

(Plaintiff's Answers to Defendant McKeithen's Interrogatories, No. 25 attached hereto.)

When Defendant McKeithen asked Plaintiff, through interrogatories, if she were claiming any bodily injury as a result of any actions by a Bay County deputy sheriff, Plaintiff answered "My claims of bodily injury are related to the fight in my house, not as a result of any action of a Bay County deputy."

(Plaintiff's Answers to Defendant McKeithen's Interrogatories, No. 13 attached hereto.)

---

[4]During her deposition, Plaintiff agreed with the Bay County Jail booking documents that state Plaintiff arrived at the jail at 1:57 and was released at 5:28. (Deposition Mollie Barnes, p. 31, lines 6-16)

During her deposition in this case, Plaintiff testified as follows:

Q: And did you sustain any type of physical injury during your time in the jail?

A: No physical injury but I was certainly harassed by the intake officer and threatened and scared.

(Deposition Mary Barnes p. 37, lines 5-8.)

· · ·

Q: What was it she said to you?

A: She began to look at my charge and told me it was a good thing I had Jim Appleman, that I was going to need him on this.  I was in tears the entire time, being that I have never been in trouble or arrested before.  I asked her what the process was. I asked her what to expect because I was so scared and she told me that if I were to go up with that kind of attitude that I would be shanked and I would be bleeding out on the floor and a code red would be called.

Q: Did she say anything else to you?

A: Not that I can recall.

Q: You weren't shanked, correct?

A: No, ma'am luckily.

Q: And you weren't bleeding?

A: No, ma'am.  I was scared that was going to happen, though, when I was put in a room with several other women that were criminals that I did not know I was certainly very frightened.

(Deposition Mollie Barnes, p. 37, lines 17-25; p. 38, lines 1-11.)

\* \* \*

Plaintiff's claim of negligence as alleged in Count IV, fails to state a cause of action against

Defendant McKeithen.  Plaintiff simply complains that she was intimidated by the intake officer at

the Bay County Jail.  She admits that she sustained no physical injury.  To the extent that Plaintiff

attempts to state a cause of action for negligent infliction of emotional distress, such claim wholly fails as a matter of law.

It is well established Florida law that to allege a cause of action for negligent infliction of emotional distress, a plaintiff must suffer physical injury. Zell v. Meeks, 665 So.2d 1040 (Fla. 1996); Elliott v. Elliott, 53 So.2d 868, 880 (Fla. 1st DCA 2011) (In order to recover damages for emotional distress caused by the negligence of another in Florida, then the plaintiff must show that the emotional distress flows from physical injuries sustained in an impact.)

Count IV of Plaintiff's complaint wholly fails to state any cause of action against Defendant McKeithen based on alleged negligence.  To the extent that Plaintiff attempts to bring a cause of action in Count IV based on negligent infliction of emotional distress, Plaintiff suffered no physical impact.  Accordingly, to the extent that Plaintiff attempts to bring such a claim in Count IV, Plaintiff's alleged claim fails as a matter of law.  Defendant McKeithen is entitled to summary judgment in his favor as a matter of law with respect to Count IV of Plaintiff's complaint.

## CONCLUSION

Based on the undisputed facts of this case, the record evidence, including exhibits, affidavits and deposition testimony, and the case law cited herein, Defendant Frank McKeithen, in his official capacity as Sheriff of Bay County, Florida, is entitled to summary judgment in his favor as a matter of law as to all of Plaintiff's claims, both federal and state, alleged against him in Plaintiff's complaint.

Respectfully submitted this 21st day of October, 2013.

*/s/ Barbara C. Fromm*
BARBARA C. FROMM
Florida Bar No.  894273
JOLLY & PETERSON, P.A.
Post Office Box 37400
Tallahassee, Florida 32315
Tel:     (850) 422-0282
Fax:    (850) 422-1913

*Counsel for Defendant McKeithen*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished by CM/ECF filing to Marie A. Mattox, Esq., Marie A. Mattox, P.A., 310 East Bradford Road, Tallahassee, Florida  32303, on this 21st day of October, 2013.

*/s/ Barbara C. Fromm*
BARBARA C. FROMM